[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 52, whose birth name is Meyer, and the defendant husband, 45, married on November 18, 1979 in Rye, New York. It is the first marriage for both parties and they have one child, Sara, born October 14, 1983. The parties agree to joint legal custody with physical custody with the mother and liberal, flexible visitation given to the father.
The parties agreed to a stipulation dated March 10, 1997, modified by a further stipulation dated July 31, 1997, which the court approved and ordered on August 11, 1997. A subsequent stipulation dated April 6, 1993 was ordered on that date which did not modify the periodic order. The provision for the periodic order reads as follows:
 "p. Pay to the wife as unallocated support $275.00 per week every Thursday commencing March 13, 1997."
The parties are now at odds over the meaning of that order. The plaintiff claims it is child support. The defendant claims it is an unallocated alimony and child support order. There is no reference to the child support guidelines. The order is found in the context of other expenses the defendant agreed to pay, itemized a. through q. The court concludes that the word "unallocated" is intended to imply "unallocated" alimony and CT Page 13491 child support. The word "support" is intended to imply support for both the plaintiff and the minor child. The court notes each party was represented by counsel at the time of the original stipulation and the later modification.
The plaintiff has worked intermittently since the marriage, caring for Sara being her primary occupation. She has had significant health problems. In 1983 she was diagnosed as diabetic and is insulin dependent. She has chronic clinical depression but currently manages without medication. She has high blood pressure. In April, 1998, she underwent surgery for removal of a cancerous thyroid.
The plaintiff, a high school graduate, completed one term at Norwalk Community College. Currently, she is employed by the City of Stamford teaching music appreciation earning $19 hourly and averaging $144.33 gross weekly. The court concludes that the plaintiffs employment skills and future employment opportunities are very limited.
The defendant, a high school graduate, completed one year of college. He was working in the printing industry when this action commenced by service of the complaint on February 12, 1997. The defendant was employed as a lithographer by ML Graphics, Inc., a company he operated with one other from 1992 until later in 1997, when the defendant accepted a position as an employee. His affidavit dated March 10, 1997 (Plaintiff's Exhibit A) lists gross weekly wage of $1,525 and net, after mandatory deductions, of $1,128.24 and no other sources of income. Currently, he is employed by Metro Selinger Industries, LLC as department manager earning an annual salary of $83,564 or $1,607 weekly gross and net of $1,180.54 after mandatory deductions and no other sources of income.
The parties' chief asset is the marital home located at 167 Woodridge Drive South, Stamford, Connecticut which the plaintiff values at $320,000 and the defendant at $315,000. The court accepts the plaintiffs fair market value. The property is encumbered by a mortgage balance of $172,500 and an attachment on plaintiff's interest by the plaintiff's initial attorney for $15,000. The plaintiff disputes the amount being claimed. The plaintiff's mother died January 31, 1999 and from her estate the plaintiff received a partial distribution of $150,000 currently deposited at Fleet Bank Money Market listed by plaintiff on her affidavit as $152,000. The rate of interest is not listed nor CT Page 13492 does the affidavit list the interest as income. The court imputes 6% interest or $175 weekly, Dew v. Dew, FA 93 0133876S, memo filed May 21, 1999 (Harrigan, J.); Miller v. Miller, Supreme Court of New Jersey, July 15, 1999, 1999 WL 496606 (N.J.) The plaintiff lists other assets totaling $13,200 and liabilities of $34,375 including the disputed legal bill now in suit.
The defendant lists pension and retirement plans valued at $17,100 on his affidavit as well as cash value of $8,214 in a $200,000 life insurance policy and a Jeep for $5,000. His remaining assets not enumerated total $6,000.
The marriage breakdown appears to be due to the plaintiff's health problems, through no fault of hers, and to the defendant's seeking companionship with other women.
The defendant's claims for relief propose that the marital home become the sole property of the plaintiff, with her being solely responsible for the mortgage balance and the attachment; that he pay an unallocated order of alimony and child support, suggesting $400 weekly; that he continue to provide medical coverage for Sara and that he retain his other assets. The plaintiff requests $600 weekly periodic alimony in addition to child support pursuant to the guidelines and sole ownership of the marital home. Each has made other proposals which the court need not discuss.
The court must first determine the amount of child support required by application of the guidelines, Favrow v. Vargas,231 Conn. 1, 26-29. The plaintiff's weekly income is determined to be $200 after allowing for mandatory deductions. The defendant's weekly net income is $1,181, net the medical deduction providing a combined net weekly of $1,381. The basic child support obligation for one child is $254 of which the defendant's share is 85% or $216. The defendant is also required to bear 85% of the unreimbursed medical expenses incurred for Sara that exceed $100 per year. The court finds it appropriate to apply Section46b-215a-3 child support guidelines deviation criteria (5) Coordination of total family support in that (A) division of assets will provide the plaintiff with the deductions available to a homeowner for taxes and mortgage interest; (B) the alimony order made unallocated implicates (C) tax planning by allowing the defendant to pay more dollars but he will be able to deduct the entire payment as tax deductible alimony. The court is aware that the child support aspect will end but the unallocated order CT Page 13493 is appropriate in the present circumstances.
Having reviewed the evidence in light of the relevant statutes and case law, the court enters the following decree:
1. Judgment is rendered dissolving the marriage on the ground of irretrievable breakdown and each party is declared to be unmarried.
2. Joint legal custody of Sara is ordered with physical custody with the mother and the father given liberal, flexible visitation.
3. The defendant shall pay to the plaintiff the sum of $600 weekly as unallocated alimony and child support until the death of either party, the plaintiff's remarriage or future court order based on Section 46-86 or on substantial change in circumstances. A wage withholding order is entered as required.
4. The defendant shall be responsible for 85% of any unreimbursed medical expenses exceeding $100 annually incurred for the child and the plaintiff shall assume the remaining 15% as well as the initial $100. The defendant shall continue to cover the child on his medical insurance so long as legally required to do so.
5. The defendant shall continue the current life insurance policies to the extent that the child is provided with $50,000 face value coverage for so long as the child support obligation exists and the plaintiff is provided with $100,000 face value coverage for so long as the periodic alimony order continues to exist, provided coverage shall be reduced to $50,000 on the defendant's 60th birthday and the obligation shall expire on his 70th birthday. The purpose of this order is to give the plaintiff some measure of security for the periodic alimony and the life insurance provisions shall be as modifiable as the alimony.
6. The defendant's interest in the marital home and its contents are awarded to the plaintiff "as is" who shall assume the mortgage balance and attachments, holding the defendant harmless and indemnified. The plaintiff's attorney shall arrange for execution of the quitclaim deed and any endorsements needed on the homeowners or title policies.
7. The plaintiff shall retain the remaining assets in her CT Page 13494 name as well as the entire balance in the Fleet CD listed by defendant as $3,000.
8. The defendant shall retain the remaining assets in his name as well as the U.S. Savings Bonds listed by him as $2,000 jointly held. The plaintiff shall endorse her interest in them to the defendant.
9. The court found an arrearage of the temporary orders existed on October 1, 1999 when the trial concluded. The parties agreed that the defendant owed eight weeks of unpaid pendente at $400 weekly, a total of $3,200, homeowners insurance premiums of $438, a waterbill for $63.45, medical bills, an electric bill and a gas bill. The defendant shall liquidate the unpaid pendente obligations at the rate of $100 weekly.
9. Each party shall remain solely liable on the liabilities each has listed on the respective financial affidavits.
10. The plaintiff shall retain the 1989 Jeep or its proceeds as her sole property.
Counsel for the plaintiff is requested to prepare the judgment file.
HARRIGAN, J.